**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 20-cv-03209-CMA

T.J.D.,

      Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of Social Security,[1]

      Defendant.

---

**ORDER REVERSING AND REMANDING DENIAL OF DISABILITY BENEFITS**

---

      This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff T.J.D.'s application for disability insurance benefits and supplemental security income. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court reverses the denial of benefits and remands the case for further proceedings.

## I.     <u>BACKGROUND</u>

      Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on June 13, 2017. (Doc. # 15-5 at 167.)[2] She also filed a

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The exhibits filed at Doc. # 15 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 15-5) and the page number from the Administrative Record (*e.g.*, at 167).

Title XVI application for supplemental security income on December 13, 2018. (*Id.* at 187.) Plaintiff alleges a disability onset date of April 4, 2017, due to epilepsy, diabetes, depression-anxiety, allergies to gluten and dairy, acid reflux, fatty liver, obesity, sinus problems, hip dysplasia, and osteoporosis arthritis. (Doc. # 15-6 at 198.) At the time of Plaintiff's alleged disability onset date, she was 37 years old. (Doc. # 15-2 at 23.)

Plaintiff's applications for disability insurance benefits and supplemental security income were initially denied on April 6, 2018. (Doc. # 15-4 at 84.) She then requested a hearing before an administrative law judge ("ALJ"). (Doc. # 15-2 at 30.) Plaintiff and an impartial vocational expert, Ashley Bryars, testified at the hearing, which was held on July 24, 2019. (*Id.*)

On November 10, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process and denied Plaintiff's request for benefits.[3] (*Id.* at 9.) At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 4, 2017, the alleged onset date. (*Id.* at 15.) At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis, bilateral hip dysplasia, degenerative disc disease of the lumbar spine, and obesity. (*Id.*) The ALJ also found that Plaintiff has other non-severe physical impairments, including

---

[3] The five-step process requires the ALJ to determine whether a claimant: (1) has engaged in substantial gainful activity during the alleged period of disability; (2) has a medically severe impairment or combination of impairments; (3) has a condition which meets or equals the severity of a listed impairment; (4) is able to return to his or her past relevant work; and, if not, (5) is able to perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of establishing a prima facie case of disability at steps one through four; the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

epilepsy, diabetes, mellitus, allergies, gluten intolerance, acid reflux, fatty liver, sinus problems including sinusitis, and ear problems including tinnitus. (*Id.*) In addition, the ALJ found that Plaintiff has medically determinable mental impairments of anxiety and depression. (*Id.* at 15–17.) The ALJ considered the "paragraph B" criteria of the four areas of mental functioning and determined that Plaintiff's mental impairments do not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and are therefore non-severe. (*Id.*)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the one of the impairments listed in the disability regulations. (*Id.* at 17.) Specifically, the ALJ considered and discussed listings 1.02A (Major Dysfunction of a Joint(s)) and 1.04 (Disorders of the Spine) and found that Plaintiff's impairments do not rise to the severity of either listing. (*Id.* at 18.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following abilities and limitations:

> The claimant has . . . the ability to lift and/or carry 10 pounds occasionally and less than 10 pound [sic] frequently, stand and/or walk for two hours total in an 8-hour workday, and sit for about six hours total in an 8-hour workday. The claimant can frequently balance, occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. The claimant can never climb ladders, ropes, or scaffolds, or work at unprotected heights, or around dangerous, moving, major manufacturing machinery.

(*Id.*)

At step four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work, such as her former positions as a corrections officer, a home caregiver, and a gas station cashier. (*Id.* at 22–23.) Finally, at step five, the ALJ found that there

are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including document preparer, address clerk, and call out operator. (*Id.* at 23–24.) Accordingly, the ALJ concluded that Plaintiff is not disabled under the Social Security Act and denied her requests for disability benefits and supplemental security income. (*Id.* at 24.)

Plaintiff submitted a request for review of the ALJ's decision by the Appeals Council. (*Id.* at 1.) The Appeals Council denied Plaintiff's request on August 26, 2020, which made the ALJ's decision the final decision of the Commissioner. (*Id.*); *see Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff then initiated this action by filing her Complaint on October 27, 2020. (Doc. # 1.) She filed her Opening Brief on June 2, 2021. (Doc. # 21.) The Commissioner filed a Response Brief (Doc. # 24), and Plaintiff followed with her Reply Brief (Doc. # 27). The matter is now ripe for review.

## II.    LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 217 (1938). Substantial evidence "is more than a scintilla, but less than a preponderance." *Campbell v. Bowen*, 822 F.2d 1518, 1521

(10th Cir. 1987). Thus, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it *de novo*." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted).

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and citing cases). The standard for harmless

error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.   DISCUSSION

Plaintiff raises four arguments for reversing the ALJ's decision. She contends (1) the ALJ erred at step three by failing to rely on substantial evidence when she determined that Plaintiff's medical impairments do not meet listing 1.02A on the basis that Plaintiff did not show she is unable to ambulate effectively; (2) in the alternative, the ALJ erred at step three by failing to address whether Plaintiff's obesity increased the severity of her hip impairments so as to equal the listing of 1.02A; (3) the ALJ erred at step four by failing to consider the limiting effects of Plaintiff's non-severe medical impairments in determining Plaintiff's RFC; and (4) the ALJ erred by failing to follow the regulations in determining whether Plaintiff followed medical recommendations and was compliant with treatment. (Doc. # 21 at 7.) The Court will address each point in turn.

**A.   WHETHER THE ALJ'S DETERMINATION AT STEP THREE THAT PLAINTIFF'S IMPAIRMENTS DO NOT MEET LISTING 1.02A IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

At step three of the evaluation process, the ALJ must determine whether the claimant has a "medically severe impairment" which, alone or in combination with other impairments, is so severe as to preclude "substantial gainful employment." 20 C.F.R. §

404.1520(a)(4)(iii). To do so, the ALJ first looks to the list of impairments contained in 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's impairment is listed, the impairment is conclusively presumed disabling. If the claimant's impairments are not listed, however, the ALJ must determine whether the impairments are equivalent to a listed impairment. 20 C.F.R. § 404.1520(d). "For a claimant to show that [her] impairment matches a listing, it must meet all the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff has the burden at step three of demonstrating that her impairments meet all the criteria in a particular listing. *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001) (unpublished).

In the instant case, the ALJ considered whether Plaintiff's impairments meet or medically equal the severity of listing 1.02A. (Doc. # 15-2 at 19.) Listing 1.02A describes "[m]ajor dysfunction of a joint(s) (due to any cause)" and requires, in relevant part, "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively." To ambulate effectively means:

> [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00B2b. Inability to ambulate effectively means "an extreme limitation of the ability to walk" and is "defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.*

The ALJ determined that the medical evidence establishes that Plaintiff "has bilateral hip dysplasia, worse on the left, as well as osteoarthritis of the bilateral hips." (Doc. # 15-2 at 18.) However, the ALJ concluded that Plaintiff's hip impairments do not rise to listing level severity because "there is no evidence that the claimant is unable to ambulate effectively." (*Id.*) The ALJ explained that the medical record demonstrates that Plaintiff was "at times noted to have abnormal gait," but "she was also noted to have normal gait without the required use of assistive devices." (*Id.*) The ALJ further observed that Plaintiff "has been noted to be quite active, even winterizing her home on her own and traveling, and she is able to maintain her own personal care, go out alone, and shop in stores." (*Id.*) As such, the ALJ determined that Plaintiff's impairments do not rise to the severity of listing 1.02A. (*Id.*)

1.      Substantial Evidence

Plaintiff first contends that the ALJ's citations to the medical record do not support her finding that Plaintiff can ambulate effectively. (Doc. # 21 at 25–27.) Plaintiff asserts that those same citations "actually support contrary findings, perhaps save one." (*Id.* at 26.) Having carefully reviewed the challenged citations and the medical record as a whole, the Court finds that the ALJ's determination that Plaintiff did not establish that

she is unable to ambulate effectively is supported by substantial evidence in the record

and not overwhelmed by contrary evidence. *See Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992). Although the records indicate that Plaintiff has limitations with

ambulation, they do not overwhelmingly establish that Plaintiff is unable to ambulate

effectively so as to equal the severity of the listing. For example, records from a March

1, 2018 consultive examination by Dr. Margaret MacDonald indicate that Plaintiff walked

into the examination room with "a very abnormal gait" and "held onto the walls or

furniture," but she did not use an assistive device. (Doc. # 15-7 at 465–69.) After

conducting a physical examination, Dr. MacDonald opined that Plaintiff had difficulties

with ambulation but that she would be able to stand or walk for up to three hours in an

eight-hour workday. (*Id.* at 469). Some records indicate that Plaintiff, at times, had a

"waddling" or "antalgic" gait, (*id.* at 350, 367, 534), while others indicate that Plaintiff had

normal or fair locomotion and gait (*id.* at 477.) At the hearing, Plaintiff arrived with a

walker and explained that Nurse Susan Dorman had issued her the walker because

Plaintiff had been experiencing falls. (Doc. # 15-2 at 47.) However, several records

show that Plaintiff was able to carry out activities of daily living, including maintaining

her personal care, completing household chores, shopping in stores, winterizing her

home, traveling, and going to church. (Doc. # 15-6 at 211–214; Doc. # 15-7 at 465, 476,

478.)

Although Plaintiff argues that the evidence supports a finding that Plaintiff is

unable to ambulate effectively, the Court may not "displace the agenc[y's] choice

between two fairly conflicting views, even though the court would justifiably have made

a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084

(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). "The possibility of

drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence." *Id.*

(quoting *Zoltanski*, 372 F.3d at 1200). Having reviewed the record, the Court is satisfied

that the ALJ's determination that Plaintiff's hip impairments do not rise to the level of

severity required for listing 1.02A is supported by substantial evidence.

    2.    Opinion of Nurse Dorman

    Plaintiff next objects that the ALJ erred by failing to consider Nurse Dorman's

opinion in the analysis of listing 1.02. (Doc. # 21 at 28.) Plaintiff's argument relating to

Nurse Dorman and the ALJ's step three analysis is two-fold. First, Plaintiff contends that

the ALJ erred by failing to find Nurse Dorman's opinion persuasive as a matter of law.

Second, Plaintiff argues that the ALJ erred by failing to mention or rely on Nurse

Dorman's opinion altogether in evaluating whether Plaintiff's impairments meet or equal

the listing of 1.02A. (*Id.* at 29.)

    Effective March 27, 2017, the regulations changed the procedures and standards

for evaluating medical source opinions. 20 C.F.R. § 404.1520c. Because Plaintiff filed

her claim in June 2017, the ALJ correctly applied the revised regulations.[4] Under the old

---

[4] Plaintiff appears to argue in a footnote that the revised regulations are invalid and did not abrogate the previous standard for according more weight to treating sources. (Doc. # 21 at 29–30 n.4.) However, Plaintiff nevertheless uses the standard of the new regulations to argue that the ALJ erred in not finding Nurse Dorman's opinion "persuasive." The Court finds no merit in Plaintiff's argument and applies the updated guidelines to claims filed after the effective date. *See Tuttle v. Commissioner*, 853 F. App'x 246, 249 n.3 (10th Cir. 2021) (unpublished).

regulations, the opinions of treating sources are generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule and state that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." Instead, the Commissioner considers the persuasiveness of each medical source opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ must explain her approach to these two factors, but she need not expound on the remaining three unless she finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *Id.*; *see Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "[F]or supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone*, 2021 WL 319354, at *6. Stated differently, a supportability inquiry examines how well a medical source supported and explained their opinion. *Id.* Consistency, on the other

hand, is "an all-encompassing inquiry" that focuses on how well a medical source opinion is supported, or not supported, by the entire record. *Id.*

Plaintiff asserts that Nurse Dorman was Plaintiff's "primary medical practitioner since 2016." (Doc. # 21 at 29.) On June 21, 2019, Nurse Dorman completed a treating source statement in which she opined that a hand-held assistive device—a walker— was medically required to aid Plaintiff walking and standing and that Plaintiff required a walker on all surfaces and terrains for all ambulation. (Doc. # 15-7 at 562.) She further opined that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, could not walk 200 feet without stopping to rest, and could not carry out routine ambulatory activities such as shopping and banking at a reasonable pace without extra breaks. (*Id.* at 561.) Nurse Dorman concluded that Plaintiff was "now unable to sit, stand, or walk for any period of time." (*Id.* at 563.)

The ALJ did not refer to Nurse Dorman's treating source statement in her analysis of listing 1.02A. However, at step four, the ALJ discussed the June 21, 2019 treating source statement and found Nurse Dorman's opinion "unpersuasive." (Doc. # 15-2 at 22.) The ALJ explained that Nurse Dorman's opinion "is inconsistent with and unsupported by the medical evidence of record, including Ms. Dorman's own notes, as it greatly overstates the claimant's limitations. It is also inconsistent with and unsupported by the claimant's own reporting." (*Id.*) (citations omitted). The Court finds that the ALJ applied the correct legal framework for evaluating Nurse Dorman's opinion and that substantial evidence supports the ALJ's conclusion that Nurse Dorman's opinion is unpersuasive. Significantly, the ALJ cited several examples from the record where

Nurse Dorman's opinion was inconsistent with her own notes, with other medical records of Plaintiff's limitations, and with Plaintiff's own reporting. (Doc. # 15-2 at 21.) Notably, Nurse Dorman is the only provider to opine that Plaintiff requires a walker. It is the ALJ's prerogative to weigh the medical evidence before her. *See Guillar v. Commissioner*, 845 Fed. Appx. 715, 719 (10th Cir. 2021) (unpublished). Because the ALJ's decision is supported by substantial evidence, the Court will not disturb her findings. *See id.*

Given that the Court finds that the ALJ's conclusion that Nurse Dorman's opinion is unpersuasive is supported by substantial evidence, the Court disagrees with Plaintiff that the ALJ reversibly erred at step three by failing to mention or rely on Nurse Dorman's opinion altogether in evaluating whether Plaintiff's impairments meet or equal the listing of 1.02(A). Plaintiff cites to no authority that requires the ALJ to expressly discuss every piece of medical evidence in evaluating whether Plaintiff's impairments meet a listing. Moreover, even if the ALJ had discussed Nurse Dorman's opinion, the Court finds that including and crediting Nurse Dorman's opinion in the listing analysis would not mandate the conclusion that Plaintiff's impairments meet the severity of the listing. Stated differently, Nurse Dorman's opinion would not "overwhelm" the other evidence of Plaintiff being able to effectively ambulate at times and perform activities of daily living. *See Koskinas v. Saul*, No. 19-cv-03249-PAB, 2021 WL 1186667, at *4 (D. Colo. Mar. 30, 2021) (affirming the ALJ's determination that a plaintiff's impairments did not meet listing 1.02 in part because there was "substantial evidence that, while plaintiff was prescribed a walker, he does not always use his walker and sometimes only uses a

cane" and therefore the plaintiff failed to show "that he was unable to ambulate effectively at all times").

For these reasons, the Court affirms the ALJ's conclusion at step three that Plaintiff's hip impairments do not medically equal the severity of listing 1.02A.

## B.   WHETHER THE ALJ ERRED AT STEP THREE BY FAILING TO ADDRESS WHETHER PLAINTIFF'S OBESITY INCREASED THE SEVERITY OF HER IMPAIRMENTS

In the alternative, Plaintiff argues that the ALJ erred at step three by failing to address whether Plaintiff's obesity increased the severity of her bilateral hip dysplasia or osteoarthritis of the bilateral hips or created additional functional limitations with her gait or ability to ambulate which would inform whether Plaintiff's impairments equaled listing 1.02A. (Doc. # 21 at 30–33.) Plaintiff concedes that the ALJ discussed obesity and SSR 19-2p in her step three analysis of the listings. (*Id.* at 31.) However, Plaintiff argues that the ALJ's discussion was inadequate because the ALJ did not make specific findings relating to obesity and hip dysplasia, osteoarthritis of the bilateral hips, and ambulation. (*Id.* at 31–32.)

SSR 19-2p provides guidance for evaluating cases involving obesity. 2019 WL 2374244 (May 20, 2019). "Obesity is not a listed impairment; however, the functional limitations caused by the [medically determinable impairment] of obesity, either alone or in combination with another impairment(s), may medically equal a listing." *Id.* at *2. SSR 19-2p provides that, in considering obesity under the listings, the ALJ should "evaluate each case based on the information in the case record." *Id.* at *4. The guidelines note

that "obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing." *Id.*

In the instant case, the ALJ included the following analysis of obesity at step three:

> While there is no specific listing for obesity, this impairment was considered in conjunction with the claimant's other impairments as instructed by SSR 19-2p. As indicated in SSR 19-2p, people with obesity have a higher risk for developing other impairments, such as type II diabetes, mellitus, heart disease, respiratory impairments, osteoarthritis, mental impairments, and cancer. Furthermore, the effects of obesity combined with other impairments can be greater than the effects of the impairments considered separately. However, in the instant case, the claimant's obesity does not medically equal a listing, as it does not significantly increase the severity or functional limitations of the claimant's other impairments.

(Doc. # 15-2 at 18.)

Having reviewed this analysis, the Court finds that the ALJ appropriately followed the applicable rules and regulations and considered obesity in conjunction with Plaintiff's other impairments to determine whether Plaintiff's impairments meet listing level severity. Plaintiff cites to no authority requiring the ALJ to engage in a more detailed or specific written analysis considering the effects of obesity on each impairment separately. The Court finds it sufficient that the ALJ applied SSR 19-2p and found that Plaintiff's obesity "does not significantly increase the severity or functional limitations of [her] other impairments." *Id.*; *see Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."). Moreover, in evaluating Plaintiff's impairments, including hip dysplasia and

osteoarthritis, the ALJ relied on examining physician's reports that considered Plaintiff's obesity, including the consultive examination of Dr. MacDonald. (Doc. # 15-2 at 18; Doc. # 15-7 at 466); *see Johnson v. Commissioner*, 764 F. App'x 754, 759 (10th Cir. 2019) (finding no error in an ALJ's consideration of obesity where the ALJ's determination was supported by an examining physician's report that considered the claimant's obesity). Having carefully reviewed the record, the Court finds that the ALJ's determination that Plaintiff's obesity did not significantly increase the severity of her other impairments is supported by substantial evidence. The Court therefore affirms the ALJ's step three determination.

**C.    WHETHER THE ALJ ERRED AT STEP FOUR BY FAILING TO CONSIDER THE LIMITING EFFECTS OF PLAINTIFF'S NON-SEVERE MEDICAL IMPAIRMENTS OF DEPRESSION AND ANXIETY IN DETERMINING PLAINTIFF'S RFC.**

Next, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC because the ALJ failed to factor in Plaintiff's non-severe mental impairments of depression and anxiety. (Doc. # 21 at 33.) Plaintiff contends that this is not harmless error and requires remand for a new RFC formulation. The Court agrees with Plaintiff.

In assessing a claimant's RFC, an ALJ must "consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In *Wells*, the Tenth Circuit clarified that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." 727 F.3d at 1068–69. More specifically, the Tenth Circuit has

repeatedly cautioned that a blanket statement indicating that step two findings relating to non-severe mental impairments have been incorporated into the RFC assessment is inadequate. *See id.* at 1069; *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013). Rather, in assessing a claimant's RFC, the ALJ "must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. Therefore, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process **requires a more detailed assessment** by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." *Id.* (emphasis added).

In *Wells*, the ALJ had concluded at step two that the plaintiff's mental impairments were nonsevere and stated "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." 727 F.3d at 1069. The Tenth Circuit indicated that this step-two statement, standing alone, was "inadequate under the regulations and the Commissioner's procedures" for concluding that the plaintiff had no limitations based on her mental impairments at step four. *Id.* However, the court observed that the ALJ did "separately discuss [plaintiff's] impairments to some degree" when assessing her credibility as part of his RFC determination. *Id.* The court noted that "[t]his discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more

detailed assessment of [plaintiff's] ability to complete various job functions as part of determining her RFC." *Id.* Nevertheless, the court determined that it need not decide whether the discussion was adequate because it found that the ALJ's conclusions were not supported by substantial evidence. *Id.*

Similar to the ALJ in *Wells*, the ALJ in the instant case determined at step two that Plaintiff's medically determinable mental impairments of depression and anxiety cause no more than 'mild' limitation in any of the functional areas and are therefore nonsevere. (Doc. # 15-2 at 15–17.) The ALJ then stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(*Id.* at 17.) Like the step-two statement implied to be inadequate in *Wells*, the ALJ's step-two statement that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" is insufficient under the regulations for concluding at step four that Plaintiff has no mental functional limitations. *See Wells*, 727 F.3d at 1069; *see also Alvey*, 536 F. App'x at 794 (criticizing as inadequate the ALJ's step-two statement: "[T]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found").

More significantly, unlike the ALJ in *Wells*, the ALJ in this case entirely failed to discuss or even mention Plaintiff's nonsevere mental impairments at step four in

18

formulating Plaintiff's RFC. Instead, the ALJ stated that Plaintiff "alleges disability primarily upon physical limitations" and proceeded to confine her narrative discussion to only Plaintiff's *physical* impairments and associated limitations. (Doc. # 15-2 at 18–22.) Nowhere did the ALJ discuss Plaintiff's depression, anxiety, or her ongoing mental health counseling. The ALJ therefore erred by failing to present a "more detailed assessment" of Plaintiff's mental impairments in her RFC discussion. *See* SSR 96-8p, 1996 WL 374184, at *4; *Alvey*, 536 F. App'x at 794 ("[A]t step four the ALJ here, unlike the ALJ in *Wells*, did not engage in any analysis of mental functions and how they may be impacted (or not) by [plaintiff's] medically determinable mental impairments. It appears, therefore, that the ALJ failed to employ the step-four analytical procedure prescribed by the regulations."); *cf. Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (distinguishing *Wells* where the ALJ discussed evidence at step four relating to a nonsevere mental impairment).

Having determined that the ALJ erred by failing to appropriately discuss Plaintiff's nonsevere mental impairments in formulating her RFC, the Court must now consider whether such error is harmless. A determination of harmless error may be appropriate "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. In *Alvey*, the Tenth Circuit held that the error of failing to consider nonsevere mental impairments at step four does not necessarily warrant remand if "the evidence in [the] case does not support assessing any functional limitations from mental

impairments." 536 F. App'x at 794. Specifically, the *Alvey* court found that the error was harmless and remand would be futile because "there [we]re no records indicating treatment by a mental practitioner" and no substantial evidence to support any specific mental limitations in the plaintiff's RFC. *Id.* at 794–795.

Unlike *Alvey*, where there was little evidence of mental impairments, treatment, or limitations, the record in this case includes over 200 pages of mental health records detailing more than two years of treatment for depression and anxiety. (Doc. # 15-7 at 564–785.) At the hearing, Plaintiff testified about her depression, anxiety, and eating issues, and she stated that she had not been approved for weight loss surgery because she had not received clearance from her mental health counseling. (Doc. # 15-2 at 44–46.) Accordingly, Plaintiff argues that the ALJ's failure to consider her mental health in formulating her RFC cannot be harmless given the extensive records of her mental health impairments and associated limitations. (Doc. # 21 at 39–40.)

As an example of evidence supporting mental functional limitations, Plaintiff points to an August 23, 2017 mental health assessment from her mental health treatment records. (Doc. # 15-7 at 705.) The assessment indicates that Plaintiff "presents with symptoms of depressed mood most of the day" and "does not engage with others feeling like they are judging her about her weight and other factors of not having a job, not going to college etc. She has no interest in daily activities and tends to isolate." (*Id.*) The assessment also rated Plaintiff for different mental categories, which included several areas of functioning relevant to her RFC. For example, for "Attention," Plaintiff was assessed "4 – Occasional low-level disruption of daily activities and impact

20

on functioning." (*Id.* at 706.) She was also assessed "7 – Persistent and incapacitating; affecting most aspects of daily functioning" for both "Anxiety" and "Depressive." (*Id.* at 707.) For "Role Performance – Employment/Education" Plaintiff was assessed "5 – Frequent disruption of role performance." (*Id.*) Her overall mental health symptom severity was rated "5 – MH Symptoms are present which require formal professional mental health intervention." (*Id.*) The Court agrees with Plaintiff that, unlike the dearth of evidence of mental health impairments in *Alvey*, the substantial mental health evidence in this case could potentially support specific mental limitations in Plaintiff's RFC.

Defendant argues that any error is harmless because the ALJ thoroughly discussed Plaintiff's mental health at step two and it would be illogical to require the ALJ to "copy-and-paste" her findings to another section in the decision two pages later. (Doc. # 24 at 20.) However, as the Court has already discussed, "even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' [s]he must further consider and **discuss** them as part of his residual functional capacity (RFC) analysis at step four." *Wells*, 727 F.3d at 1064 (emphasis added). Most importantly, an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* Because the ALJ found that Plaintiff had "mild" limitations in each of the four broad functional areas and "nonsevere" mental impairments of depression and anxiety, the ALJ was required to "include a narrative discussion" of Plaintiff's mental impairments in formulating her RFC. Under the circumstances of this

case, the step two analysis is an inadequate substitute for the step four analysis as required by the regulations and Tenth Circuit precedent.

Further, Plaintiff argues that the ALJ's step two analysis is insufficient because the ALJ relied primarily on the opinions of state agency consultants Gayle Frommelt, PhD, and William E. Morton, Psy.D., "**neither of whom had reviewed [Plaintiff's] hundreds of pages of mental health treatment**." (Doc. # 21 at 38.) The ALJ found both Dr. Frommelt and Dr. Morton's opinions "persuasive" because they were consistent with and well-supported by the evidence of record, and she thoroughly discussed each opinion at step two of her analysis. (Doc. # 15-2 at 17.) Dr. Frommelt and Dr. Morton each opined that Plaintiff had only "mild limitations" related to her mental health impairments, which the ALJ relied upon in making her step-two determination. *See* (Doc. # 15-3 at 68–76; Doc. # 15-7 at 475–78.) However, the Court agrees with Plaintiff that it does not appear that either Dr. Frommelt or Dr. Morton reviewed Plaintiff's 200 pages of mental health records, including the August 23, 2017 mental health assessment discussed above. Accordingly, the Court finds it "fairly debatable" whether a more particularized assessment of Plaintiff's mental impairments at step four would result in including mental limitations in Plaintiff's RFC. *Alvey*, 536 F. App'x at 794.

For these reasons, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Because it is "fairly debatable" whether the evidence in this case could support assessing functional limitations from mental impairments, the Court finds that the ALJ erred by failing to appropriately

consider and discuss Plaintiff's mental impairments in assessing her RFC. *See Walling v. Berryhill*, 370 F. Supp. 3d 1306, 1314 (W.D. Okla. 2019) (reversing and remanding where an ALJ erred by failing to conduct a particularized assessment of Plaintiff's mental functions in his RFC analysis and the court found that such error was not harmless). Remand is therefore required.

**D.   WHETHER THE ALJ ERRED IN DETERMINING WHETHER PLAINTIFF FOLLOWED MEDICAL RECOMMENDATIONS.**

Plaintiff also argues that the ALJ erred by failing to follow 20 C.F.R. § 404.1530 and SSR 18-3p, which proscribe regulations for how an ALJ must consider a plaintiff's failure to follow prescribed treatment. (Doc. # 21 at 40–42.) The Court agrees with Defendant that Plaintiff's argument is misplaced because those regulations govern "circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment." *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). In this case, those regulations are inapplicable because the ALJ "did not purport to deny plaintiff benefits on the ground [s]he failed to follow prescribed treatment." *Id.* Rather, the ALJ considered Plaintiff's unwillingness to lose weight and non-compliance with pre-surgical requirements for bariatric surgery as factors suggesting that Plaintiff's hip impairment symptoms may not be as debilitating as she claimed. (Doc. # 15-2 at 22.) The regulations permit the ALJ to consider non-compliance when evaluating subjective claims. *See* SSR 16-3p, 2017 WL 5180304, at *9. The Court therefore rejects Plaintiff's argument.

## IV.   __CONCLUSION__

For the foregoing reasons, it is ORDERED that the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings consistent with this Opinion.

DATED: October 3, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge